ACCEPTED
07-15-00070
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
6/15/2015 11:09:36 AM
Vivian Long, Clerk

NO. 07-15-00070-CV

IN THE
COURT OF APPEALS
SEVENTH DISTRICT OF TEXAS

AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
6/15/2015 11:09:36 AM
VIVIAN LONG
CLERK

JANE FULLER JACKSON, A/K/A JANE FULLER MORRIS,

APPELLANT

V.

WILDFLOWER PRODUCTION COMPANY, INC.

APPELLEE

ON APPEAL FROM CAUSE NO. 12,664
31ST JUDICIAL DISTRICT, WHEELER COUNTY, TEXAS
HONORABLE STEVEN R. EMMERT, JUDGE PRESIDING

BRIEF OF APPELLANT
JANE FULLER JACKSON A/K/A JANE FULLER MORRIS

Mitchell G. Ehrlich
State Bar No. 06490750
P. O. Box 1258
Perryton, Texas 79070
Telephone: 806-434-0204
Facsimile: 806-434-0464
E-mail: melaw@ptsi.net

George Whittenburg
WHITTENBURG WHITTENBURG
STEIN & STRANGE, PC
State Bar No. 21397000
P.O. Box 31718
Amarillo, Texas 79105
Telephone: (806)372-5700
Facsimile: (806)372-5757
E-mail: gwhittenburg@whittenburglaw.com

ATTORNEYS FOR APPELLANT

ORAL ARGUMENT REQUESTED
JUNE 15, 2015

## IDENTITY OF PARTIES AND COUNSEL

The following is a list of parties and counsel to the trial court's judgment, as required by Rule 38.1(a) of the Texas Rules of Appellate Procedure:

1.  Trial Judge:

    HONORABLE STEVEN R. EMMERT
    31st District Court – Wheeler County
    P.O. Box 766
    Wheeler, Texas 79096-0766
    Telephone:    (806) 826-5501
    Facsimile:    (806) 826-5503

2.  Appellant (Defendant):

    JANE FULLER JACKSON, AKA
    JANE FULLER MORRIS

    Counsel:

    (Trial and Appellate)

    WHITENBURG WHITTENBURG
    STEIN & STRANGE P.C.
    George Whittenburg
    State Bar No. 21397000
    P.O. Box 31718
    1010 S. Harrison
    Amarillo, Texas 79105
    Telephone:    (806) 372-5700
    Facsimile:    (806) 372-5757

    Mitchell G. Ehrlich
    State Bar No. 06490750
    514 South Main, Suite 300
    P.O. Box 1258
    Perryton, TX 79070
    Telephone:    806-434-0204
    Facsimile:    806-434-0464

    Appellee (Plaintiff):

    Counsel:

    (Trial and Appellate)

    WILDFLOWER    PRODUCTION    COMPANY,
    INC.
    Aubrey J. Fouts
    State Bar No. 07315000
    THE FOUTS LAW FIRM
    P.O. Box 5187
    Lubbock, Texas 79408
    Telephone: (806)741-03790
    Facsimile: (806)741-1491

i

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ............................................................................ i

TABLE OF CONTENTS............................................................................................................ ii

INDEX OF AUTHORITIES..............................................................................................iii-iv

STATEMENT OF THE CASE............................................................................................ 1-2

STATEMENT REGARDING ORAL ARGUMENT.................................................................2

STATEMENT OF FACTS ................................................................................................... 2-9

ISSUES PRESENTED............................................................................................................2

SUMMARY OF ARGUMENT ....................................................................................... 10-14

ARGUMENT and AUTHORITIES................................................................................. 15-28

PRAYER................................................................................................................................ 28-29

CERTIFICATE OF COMPLIANCE........................................................................................29

CERTIFICATE OF SERVICE ...............................................................................................30

APPENDIX A:  Deed Form........................................................................................................31

APPENDIX B:  Quitclaim Deed Form......................................................................................32

APPENDIX C:  Rule 11 Agreement............................................................................................33

APPENDIX D:  November 30, 1993 Deed .................................................................................34

APPENDIX E:  Judgment............................................................................................................35

APPENDIX F:  Findings of Fact and Conclusions of Law .........................................................36

APPENDIX G:  Proposed Title Examination Standards § 4.40 and 4.90 .....................................37

# INDEX OF AUTHORITIES

**Page**

**Cases:**

*Abercrombie v. Bright*, 2 SW2d 734
(Tex. Civ. App. – Eastland [11[th] Dist.] 1954, writ ref'd n.r.e.)                    15

*Bryan v. Thomas*, 365 SW2d 628 (Tex. 1963)                    24, 25, 26

*Cook v. Smith*, 174 SW 1094 (Tex. 1915)                    10, 21, 22, 23, 24 27

*Culmell v Borroum*, 458, 35 SW 942                    20

*Diversified Inc. v. Hall*, 23 SW3d 403
(Tex. Civ. App. – Houston [1[st] Dist.] 2000 pet. denied)                    10

*Enerlex v. Amerada Hess, Inc.*, 302 SW 3d 351
(Tex. App. – Eastland [11[th] Dist.], no pet.).                    22, 24, 26, 27

*Geodyne Energy Income Production Partnership I-E v. Newton Corp.*,
161 SW 3d 482, 486 (Tex. 2005)                    14, 22, 23, 24, 26, 27

*Hagaman v. Shaklee*, 243 SW 795
(Tex. Civ. App. – Galveston [1[st] Dist.] 1922, writ refused)                    20

*Houston Oil Co. v. Kimball*, 122 SW 533 (Tex. 1910)                    16

*Jernigan v. Langley*, 111 SW3d 153, 157 (Tex. 2003)                    19

*Madison v. Gordon*, 35 SW 3rd 604, 607 (Tex. 2001)                    20

*Penny v. Adams;* 420 SW 2d 820
(Tex. Civ. App. – Tyler [ 12th Dist.] 1967, writ ref'd)                    16

*Porter v. Wilson*, 389 SW 2d 650, 654 (Tex. 1965)                    14, 22, 23

*Rodgers v. Burchard*, 34 Tex 442 (1870-71)                    17

*Rogers v. Ricane Enterprises, Inc.*, 884 SW2d 763, 769 (Tex. 1994)                    14, 22, 23

*Tate v. Kramer*, 1 Tex. Civ. App. 427, 23 SW 255 (Tex. Civ. App. 1892)                    17, 18, 19

|  | Pages |
|---|---|
| *Watkins v. Edwards,* 23 Tex. 443 (1859) | 16 |
| *White v. McGregor,* 50 SW 564 (Tex. 1899) | 16 |

**Statutes**

| | |
|---|---|
| Tex. Prop. Code Ann. § 13.001 | 15-16 |

**Treatises**

| | |
|---|---|
| *5 AA Leopold, Land and Title Examination* § 28.5, 153 | 15 |
| 5 A.A. *Leopold, Land Titles and Title Examination* § 28.1 (2005); Comment, Standard 4.40 | 15 |
| *5 AA Leopold, Land and Title Examination,* § 29.13, 195 (1993) | 17 |
| *5 AA Leopold, Land and Title Examination,* § 31.12, 240 (1993) | 10 |
| 2 *Maurice Merrill, Merrill on Notice* § 921 (Vernon 1952) | 15 |

**Other Authorities**

| | |
|---|---|
| F. Walter Conrad, *Property-Deeds-Notice-Quitclaim redefined in a Restricted Manner for the Purposes of Notice under the Recording Acts. Bryan v. Thomas,* 365 SW2d 628 (Tex. 1963), 41 TEX. L. REV. 939, 941-42 | 24 |
| Owen L. Anderson, Proposed *Texas Title Examination Standards* (2013) | 15, 21,25 |

TO THE HONORABLE COURT OF APPEALS:

COMES NOW, Jane Fuller Jackson, a/k/a Jane Fuller Morris, Defendant in the trial court and hereinafter referred to as "Appellant", and files her Brief seeking a reversal of the trial court's judgment and a rendition on her behalf. In support of her position, Appellant would respectfully show this Court the following:

STATEMENT OF THE CASE

This lawsuit involves conflicting title claims to a mineral interest located in Wheeler County, Texas under two competing mineral deeds.

On July 15, 2013, Appellee and Plaintiff, Wildflower Production Company, Inc. ("Wildflower") filed its First Amended Original Petition seeking a declaration under the Declaratory Judgment Act that the disputed mineral interest involved in this case was solely owned by Wildflower and that a competing mineral deed without warranty to Appellant's predecessor, Leete Jackson, III, was void.[1]

On February 10, 2014, Wildflower and Appellant tried this case in a bench trial before the Honorable Steven R. Emmert in the 31st Judicial District Court in Wheeler County, Texas. The issues to be decided by Judge Emmert were subject of a Rule 11 Agreement, a copy of which has been attached as Exhibit "C" to the Appendix.

On January 8, 2015, Judge Emmert entered a Judgment in favor of Wildflower which was filed on January 8, 2015.[2] Appendix (Exhibit "E")

On January 14, 2015, Appellant filed her Request for Findings of Fact and Conclusions of Law.[3] On January 29, 2015, the Court made Findings of Fact and Conclusions of Law.[4] Appendix (Exhibit "F")

---

[1] CR: 1: 13-20
[2] CR: 1: 21-23

1

On February 19, 2015, Appellant timely filed her Notice of Appeal.[5]

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument should be permitted because the trial court adopted the argument of Appellee, contrary to long-established and consistently-applied principles, as to the proper construction of, and elements that determine and define as a matter of law, a quitclaim conveyance of real property under Texas law.

## ISSUES PRESENTED

Did Appellant waive for purposes of this Court's consideration her claim that the November 30, 1993 deed was a quitclaim deed? If not, is the November 30, 1993 mineral deed from FBG Financial Services, Inc. to Wildflower a quitclaim deed thereby imputing notice as a matter of law to Wildflower of Appellant's unrecorded November 23, 1993 deed and rendering moot any issue of fact on whether Wildflower had received notice from the Bank of the Bank's November 23, 1993 mineral deed on or before the November 30, 1993 mineral deed?

## STATEMENT OF FACTS

1. On September 14, 1972, R. P. Fuller and wife, Laura Elaine Fuller, executed a mineral deed recorded at volume 234, pages 307-308, real estate records, Wheeler County, Texas ("the deed") to their three children, Rex Fuller ("Rex"), Ann Fuller Cope , a/k/a Lydick ("Ann") and Appellant ("the Fuller children) of an undivided one-fourth interest in all of the oil, gas and other minerals in and under and may be produced from two tracts of land, the first tract being described by metes and bounds as containing 121.86 acres and the second tract likewise being described  by metes and bounds as

---

[3] CR: 1: 27-28
[4] CR: 1: 31-33
[5] CR: 1: 34-37

2

containing 155.4 acres, both tracts collectively containing 277.16 acres. Under the terms of the deed, each of the Fuller children received equally, share and share alike, an undivided one-twelfth mineral interest in the two tracts ("tracts 1 and 2"). [6]

2. After the execution of the deed on April 7, 1977, the Fuller children executed an Oil, Gas & Mineral Lease recorded at volume 260, pages 383-385, real estate records, Wheeler County, Texas, in favor of W. R. Gray & Associates covering tracts 1 and 2. The lease was for a primary term of three (3) years and as long thereafter as oil, gas or other minerals are produced from the land. The lease provided for the payment of a three sixteenth (3/16) royalty, proportionately reduced to the collective one fourth (1/4) mineral interest owned by the Fuller children. The lease also contained a pooling clause authorizing the formation of a 640 acre unit for the production of gas. The lease was subsequently assigned to Grace Petroleum Corporation and various other leasehold owners who all executed a Designation of Gas Unit for the so-called No. 1 C.A. Stein Unit, dated November 14, 1978, recorded at volume 271, pages 403-407, real estate records, Wheeler County, Texas, which included tracts 1 and 2, along with other leases. [7] Under the terms of the gas unit designation, all royalty for a gas well is payable in proportion to the total acreage each tract bears to the total acreage in the 640 acre unit. During the primary term of the lease, Grace Petroleum Corporation drilled and completed the C. A. Stein Unit well ("the Stein well"). Production from the Stein well continues to this date.

3. The Fuller children and their father financed their oil and gas exploration business with different banks, one of which was the First National Bank at Lubbock. On June 15,

---

[6] RR. 3: Pl's Ex. 1
[7] RR 3: Pl's Exh. 3

3

1990 Appellant and Ann executed two deeds of trust in favor of John C. Sims, as Trustee for the First National Bank at Lubbock ("the Bank"). The two deeds of trust covered various tracts of land located in Wheeler County, Texas, including tracts 1 and 2 which had been included within the 640 gas unit.[8] As a result of a default in the payment on the notes secured by the deeds of trust, the Bank foreclosed upon the various tracts of property. FBG Financial Services, Inc., the Bank's nominee and agent, purchased the property for the benefit of the Bank and obtained title to the various Wheeler County, Texas properties under two Substitute Trustee's Deeds.[9] Prior to the foreclosure, the Bank had agreed not to take a deficiency judgment against any of the Fuller children.[10] Rex testified that the foreclosure was a "managed foreclosure".[11] Even prior to the foreclosure, Rex was negotiating with the Bank to reacquire the foreclosed properties from the Bank.[12]

4. After the foreclosure, Leete Jackson, III, the Appellant's husband, made an agreement with the Bank to purchase all the tight, title and interest of the Bank which the Bank had obtained by foreclosure, in and to the mineral interests in tracts 1 and 2 previously owned by Appellant. Pursuant to this agreement, on November 23, 1993 the Bank executed and delivered a so-called "Mineral Deed Without Warranty" to Leete Jackson, III ("the November 23, 1993 deed"). The November 30, 1993 deed was prepared by John Sims ("Sims"), a partner in the firm of Sims, Kidd, Hubbert and Wilson, the Bank's attorneys who conducted the foreclosure sale[13], and conveyed "right, title and interest" of the Bank (FBGA Services, Inc.) in that portion or part of Tracts 1

---

[8] RR 3: Pl's Ex. Nos. 5 and 6
[9] RR 3: Pl's Ex. Nos. 7 and 8
[10] RR 2: 73, lns. 16-18
[11] Id., lns. 3
[12] Id. p. 27, lns. 12-16
[13] RR 2: p. 87, lns. 15-16

4

and 2 (each described by metes and bounds, consistently with the prior 1972 Deed to the Fuller children[14]), which had previously been owned by Appellant.[15]

5. Thereafter, the November 30, 1993 deed (defined below) was executed, and was recorded on December 14, 1993 at 2:14 p.m. The Substitute Trustee's deeds and the November 30, 1993 deed[16] did not include a metes and bounds description of tracts 1 and 2 nor describe the amount of royalty or mineral ownership previously owned by Appellant as did the November 23, 1993 Deed to Appellant's husband, but instead, without asserting any particular ownership interest of the Bank, whether obtained through foreclosure or otherwise, merely referenced the 640 acre No. 1 C.A. Stein Unit in which those lands (tracts 1 and 2) were included, and which was the source of the revenue collateral for the mortgaged properties/wells under the prior foreclosed upon deeds of trust.

6. At the time of the execution of the November 23, 1993 deed of all the Bank's right, title and interest by the Bank to Appellant's husband, Rex was negotiating with the Bank to acquire all of the mineral interests formerly owned by Appellant and Ann in all of the various mineral properties that the Bank previously foreclosed upon, not only in Texas but six (6) other states. Rex consummated an agreement with the Bank under the terms of which Wildflower, a corporation owned and controlled by Rex, purported to purchase all the then current right, title and interest of the Bank in foreclosed mineral interests attributable to Appellant and Ann, including the disputed mineral ownership in

_____

[14] RR 3: Pl's Exh. 11

[15] Appellant's previously owned interest was also described as including a ".0090254 royalty interest , which is the proportionately reduced share of royalty credited to Appellant's mineral interest ownership under the existing oil and gas lease covering tracts 1 and 2 that was included in the 640 acre No. 1 C.A. Stein Unit, and reflected in the Bank's records, in that typical or customary commercial bank format for mortgage purposes at the time of mortgaging of Appellant's mineral and royalty revenues to the Bank under the later foreclosed deeds of trusts/liens.

[16] RR 3: Pl's Exh. 10

5

Wheeler County, Texas as well as all right, title and interest of the Bank in various other tracts located in Texas and six (6) other states. The deed from the Bank to Wildflower covering the Wheeler County, Texas properties was dated November 30, 1993 and was recorded on December 14, 1993 at volume 417, pages 847-849, real estate records, Wheeler County, Texas ("the November 30, 1993 deed").[17] Rex's business associate, David Cowan, also entered into an agreement to acquire the mineral interests formerly owned by Rex, individually and as the Independent Executor of the Estate of R. P. Fuller.[18]

7. Despite the fact that Sims, the bank attorney involved in documenting the sale by the Bank to Rex, testified that prior to November 30, 1993 Rex was aware that Appellant's husband had previously acquired the mineral interest that was formerly owned by Appellant in tracts 1 and 2 and that Rex knew he would not be acquiring Appellant's mineral interest in tracts 1 and 2,[19] Rex nevertheless testified that he had no knowledge of the deed to Appellant's husband until June, 2011.[20]

8. After the foreclosure, Wildflower subsequently received and consistently and without exception or objection accepted royalty payments from the Stein well attributable to only Ann's mineral interests in tracts 1 and 2, and not to the Bank's interest in the prior ownership of Appellant conveyed by the Bank to Appellant's husband, as evidenced and confirmed by the fact that the royalty payment was calculated as a decimal interest exactly one-half (1/2) of what Wildflower would have been paid in the event it had also acquired Appellant's interest (equal to that of Ann) in tracts 1 and 2 from the Bank, i.e., if

---

[17] RR 3: Pl's Exh. 10
[18] RR 2: p. 30, lns. 5-10
[19] RR 2: p. 110, lns. 6-10
[20] Id., p. 57, lns. 7-10

6

the Bank and Rex did not have knowledge of nor take into account the prior conveyance of the Bank's right, title and interest in Appellant's prior ownership in the subject mineral lands pursuant to the November 23, 1993 deed.[21]   Rex testified that he was unaware that Wildflower was not being paid any royalty proceeds attributable to Appellant's former mineral interests in the disputed mineral and royalty ownership lands in this case, since all royalty payments were being made to his Bank which had financed all of Rex's acquisition of the Bank's right, title and interest in the prior mineral ownership of his two sisters[22],   and he was "too busy" to discover what he had acquired in the foreclosure sale.[23]

9.  In addition to Rex not being credited with royalty proceeds from his acquisition of the Bank's right, title and interest in Appellant's prior mineral ownership, at least from 2002 forward, Appellant[24] was paid royalty proceeds from the Stein well and Stein Unit in a decimal amount equal to the exact mineral interest her husband had purchased from the Bank[25] pursuant to the November 23, 1993 deed, and from November 23, 1993 until 2011 no issues were ever raised or objections made by Wildflower or the operator of the Stein Unit well regarding the validity of and/or crediting of royalty ownership to Appellant's mineral interest pursuant to the November 23, 1993 deed.

10. In 2010, Linn Energy, Inc. started a drilling program on the land set forth in the 640 acre gas unit. It was not until a division order title opinion was prepared in 2011 that an issue was first raised regarding the alleged conflicting ownership between Wildflower

---

[21] RR 3: Pl's Exh. 13 (royalty check stubs Morris – 0007-09; 0029-31)
[22] RR 2: p. 60, lns. 13-16
[23] RR 2: p 65, lns. 5-15; p 66, lns. 1
[24] The record is unclear on who received royalty payments from the Stein Well from the period November 23, 1993 to 2002. Leete Jackson, III died intestate on November 2, 1997. Appellant inherited his mineral interest, RR 3: Pl's Exh. 19.
[25] RR 3: Pl's Exh. 13

7

and Appellant as to tracts 1 and 2, a nineteen (19) year period.

11. Kimberly Warminski of the firm of Sprouse Shrader Smith, PC prepared a Division Order Title Opinion dated January 31, 2011 for the Linn Energy, Inc. Stein 1-3H well, which was drilled and completed and began production in 2010. In Title Requirement No. 12 the title examiner correctly credited Wildflower with only an undivided 1/12 mineral interest that was previously owned by Ann because the Bank had already conveyed to Appellant's husband the other undivided 1/12 interest previously owned by Appellant.[26] However, the examiner refused to finalize crediting of the ownership interest in favor of Appellant, and instead required all the disputing parties to agree and sign off on a stipulation of their respecting competing ownership interests, due to the fact that the November 23, 1993 deed was not filed for recording until December 3, 1993, i.e, after the execution of the November 30, 1993 deed to Wildflower, creating an issue in the title examiner's mind and expressed in her opinion as to whether Rex as the grantee in the November 30, 1993 deed was on notice of the prior November 23, 1993 deed to Appellant's husband of the Bank's right, title and interest in the disputed prior ownership of Appellant in this case. Stated succinctly, if Rex as grantee in the November 30, 1993 deed was "on notice" (actual, constructive or otherwise), of the prior existence and conveyance of the Bank's ownership in the interest pursuant to the November 23, 1993 deed, then Appellant's prior ownership in the disputed mineral lands in this case (and entitlement to the royalties and other revenues from production and all other benefits attributable to such mineral and royalty ownership interest) is validated, and the November 30, 1993 deed conveyed to Rex no part of that prior ownership. If Rex was not "on notice" of the unrecorded November 23, 1993 deed at the time of the November

---

[26] RR 3: Pl's Exh. 18

8

30, 1993 deed to him purporting to convey the then current "right, title and interest" of the Bank in the disputed mineral ownership, and paid value for the purchase of such interest, then the application and effect of the State recording statute would be to deem the prior November 23, 1993 deed void as to Rex as the subsequent purchaser under the November 30, 1993 deed, thereby vesting the disputed mineral and royalty ownership in the subject lands in this case in Appellee instead of Appellant.

12. Although 19 years had passed and no issue had ever been raised by either her client, Linn, the then operator of the Stein well, any prior operator or by Wildflower, the title examiner believed a fact question was present on this issue,[27] incredibly, despite her own client at that time having placed Appellant in a "pay status", i.e., crediting Appellant for all purposes with unequivocal ownership of the disputed mineral and royalty ownership, in the Stein well![28] As this brief points out, *infra*, the title attorney's discussion and characterization of the legal analysis pertaining to the disputed mineral and royalty ownership in this case was legally erroneous, since, as a matter of law, the November 30, 1993 deed was a quitclaim deed, the legal effect of which is and was at the time of such deed, to place Rex on actual and constructive notice, again as a matter of law, of the prior existence of the November 23, 1993 and Appellant's prior ownership of the disputed mineral and royalty ownership interest, negating, as a matter of law, the ability of Appellee to fall within the category of a bona fide purchaser for value <u>without</u> notice under the applicable state recording statute (see discussion of case law, *infra,* at pages (16-20) and thereby to apply such statute to attempt to make void the November 23, 1993 deed to Appellant's husband through which Appellant claims title, or to defeat

---

[27] Id.

[28] RR 3: Pl's Exh. 13 (royalty check stubs: Morris 0007-09; 0029-31)

9

Appellant's proven and vested legal title to the disputed mineral and royalty ownership in this case.

POINT OF ERROR NO. 1

As a matter of law, Appellant did not waive for consideration by the trial court whether the November 23, 1993 deed was a quitclaim deed. (in response to Conclusion of Law No. 5)

POINT OF ERROR NO. 2

Since the November 30, 1993 deed was a quitclaim deed, Wildflower was charged with actual notice, as a matter of law, of the existence of the November 23, 1993 deed at the time of the November 30, 1993 deed, conclusively negating BFP status to Wildflower and thereby, as a matter of law, vesting legal and equitable superior title to the disputed mineral and royalty ownership in this case in Appellant, as successor to her husband as grantee under the November 23, 1993 deed. (In response to Finding of Fact No. 4 and Conclusion of Law Nos. 1-4 and 6).

SUMMARY OF ARGUMENT

A deed transfers, and purports to transfer, complete or partial ownership in the land itself. *Cook v. Smith,* 174 SW 1094, 1096 (Tex. 1915) A sample form for a deed used in a leading treatise is attached as Appendix A. 5 *A.A. Leopold, Land and Title Examination,* § 29.13, p. 195 (2005). A quitclaim, in contrast, does not by its terms purport to establish title in the grantor nor to convey an actual ownership interest in the land in question to the grantee, but coveys to the grantee only whatever interest, *if* any, the grantor had in the property at the time of execution and delivery of the quitclaim deed. *Diversified, Inc. v. Hall,* 23 SW3d 403, 407 (Tex. Civ. App. – Houston [1st Dist.]

10

2000, pet. denied), which is sometimes stated to be a "chance of title", not title or ownership itself. A sample form for a quitclaim deed used in a leading treatise is attached as Appendix B. 5 *A.A. Leopold, Land and Title Examination*, § 31.12, p. 240 (2005) The definitive and classic element of a conveyance determining that it is a quitclaim, absent conflicting express language, is that the granting clause purports to convey to the grantee <u>only grantor's right, title and interest</u> in all or a portion of such property, or in all or a portion of the ownership in such property. (emphasis added) Stated alternatively, a quitclaim does not by its terms represent or express the intent by its granting language that the grantor owns and/or is purporting to convey any definite and specific (complete or partial) title and ownership interest in the subject property, regardless of: (1) whether the conveyance in question calls itself a deed or quitclaim; (2) whether or not it contains express warranty of title language, and/or (3) whether or not it contains a reference to a specific numerical ownership interest or undivided ownership interest previously owned (i.e., not currently owned at the time of and included within the conveyance), by grantor or grantor's predecessor in title of and included within the conveyance), by grantor or grantor's predecessor in title, or by any third party.

The November 30, 1993 deed in question by its express terms grants to the grantee only " grantor's right, title and interest", in a "portion" of "that part" of the mineral ownership in the subject land, which part or portion is equated with being (and is only described as) the "interest <u>previously</u> owned by" <u>all three</u> of the (named) Fuller children, including Appellant, and does not state or represent that the Bank's agent as grantor in the deed then currently owned, at the time of such deed, <u>any</u> definite interest in the (not further defined) "portion" or "part" of the <u>previously owned</u> collective Fuller

11

children's ownership interest, nor does the deed describe or include the source or specific quantum of such "previous" collective mineral ownership, either expressly or by reference to any recorded (or even unrecorded) prior conveyance or other source documents, and does not expressly warrant title to any partial or complete ownership interest in the land or any portion of the land, or prior or current mineral ownership in grantor or in or through any prior mineral owner in the subject land.

In light of the above indefinite and non-warranty classic quitclaim determinative language, the fact that the November 30, 1993 deed later in its language references that in light of the existing oil and gas lease on the subject land, the grantee is given or granted a "similar" "undivided interest" in lease benefits, can only be seen, under the applicable rules of construction and harmonizing of all language with the four corners of the instrument , as an acknowledgment by the grantor that any chance of title in the subject land and mineral ownership is limited to at most a "portion" or "part" of the (undefined) right, title, and interest "previously" owned by the collective Fuller children in the subject property, and not complete or 100% mineral ownership in the subject land, whatever specific percentage and current interest in such ownership that may turn out to be, if any.

In addition, the November 30, 1993 deed did not limit itself to the Bank's right title and interest (if any) in tracts 1 and 2 but referenced seven additional tracts of land located in Wheeler County, Texas, and further, instead of describing Tracts 1 and 2 specifically by metes and bounds or otherwise, the November 30, 1993 deed as noted above only referenced the disputed mineral ownership and lands in that deed by listing on Exhibit "A" a description of the 640 acre Stein Unit designation which, although it in fact included tracts 1 and 2, did not mention or describe or identify that connection or

12

inclusion, and also, contained legal descriptions for seven other tracts of land in Wheeler County, Texas with no specific decimal or percentage interests listed or described, and no representation or claim or description of any then current ownership by the grantor for any of the various properties, including but not limited to the disputed tracts 1 and 2 of the subject lands in this case. Likewise, no percentage or decimal interests or claims or representations of then current ownership for any of the various properties including the disputed subject lands in this case were set forth in either the two Deeds of Trusts or the Substitute Trustee's deeds.

Clearly the intention of the Bank and its agent grantor, by the proper construction of the express terms in the November 30, 1993 deed, was to **not** represent or define any specific ownership interest as being then currently owned by the Bank or its agent at the time of such deed, and to only convey whatever title the Bank may have owned and obtained through foreclosure previously, *if any*, in a portion of the ownership in the subject disputed lands, whatever that might be, which was previously, at some undefined point in time, owned by the collective Fuller children, and above all, thereby to insulate the Bank from any liability for any failure or unmet expectation of title, that might later be alleged by the grantee in such deed.

The fact that attorney Sims for the Bank was well aware of the actual factual situation involving the prior November 23, 1993 deed to Appellant's husband as to the disputed mineral ownership and would, regardless of any knowledge of the prior deed, have followed the generally universal and customary practice of all prudent bank attorneys in disposing of foreclosed bank properties by trustee's sale, namely, to first and foremost protect the bank from future liability for any failure of the foreclosed title to

13

meet buyer expectations, merely "piles on," with common sense and universal notice (and close to if not actual judicial notice), in support of the concept that every bank and bank officer's and bank foreclosure trustee's actual intent is to prepare and deliver a conveyance document that protects the bank and themselves from liability, i.e., to accomplish such protection by the time-honored long standing practice of conveying only by quitclaims. See, e.g., *Geodyne Energy Income Production Partnership I-E v. Newton Corp.,* 161 SW 3d 482, 486 (Tex. 2005). (A quitclaim deed without warranty cannot be a warranty or misrepresentation) To negate such intended result in this case by failing to construe the November 30, 1993 as what it is and was intended to be, namely a classic quitclaim, would defeat the Bank's intention in this case, and jeopardize such long-standing practice and the efficient Texas system for liquidation of bank collateral in the event of loan default, which has served this State and the banking, title insurance, real estate, and related industries and professions, including their attorneys, in this State for so long and so well.

There can be no doubt that at this point, the use of the classic "right, title and interest" language in the granting clause is the essence of a quitclaim deed. See, e.g., *Porter v. Wilson,* 389 SW 2d 650, 654 (Tex. 1965). "An instrument which purports to convey such right, title and interest as a grantor may have and no more will not qualify as a deed under the (5 year adverse possession limitations) statute, as it does not purport to convey the land itself nor does it specify any particular interest which is purportedly conveyed". The granting language in the November 30, 1993 deed tracts such classic quitclaim language, and with the same result in construing that conveyance as a quitclaim. See *Rogers v. Ricane Enterprises, Inc.,* 884 SW2d 763 (Tex. 1994). A

14

conveyance of all of the right, title and interest of grantor in a described oil and gas lease without warranty is "the essence of a quitclaim deed" Id. at 765; Texas Title Examination Standard Comment, §4.90, pages 13-15. (Appendix "G")

Furthermore, in order to create a definite ownership interest by reference to some other source document or ownership reference, the description supposedly defining the property interest conveyed must refer to a "judgment, certificate, bounty, warrant, patent, deed or map" specifically identifying the interest conveyed. *Abercrombie v. Bright*, 2 SW2d 734 (Tex. Civ. App. – Eastland [11th Dist.] 1954, writ ref'd n.r.e.). The applicable rules of construction for the proper determination of the intent of a conveyance as a quitclaim *vel non* requires more than a general undefined reference to a purportedly previously owned indefinite unquantified interest, which is all that is present in the November 30, 1993 deed at issue in this case.

ARGUMENT AND AUTHORITIES

A.      THE TEXAS RECORDING SYSTEM

1.  Common Law Background

At common law, title is conveyed upon the execution of a document evidencing an intention to convey, executed by the grantor and legally delivered to a grantee. "At common law in England, there was no system of registration or recording, and the rule between claimants of the same title was found in the maxim 'prior in tempore potior est in jure', which means he who is first in time has the better right". 2 Maurice Merrill, Merrill on Notice § 921 (Vernon 1952) This is still the law in Texas except as abrogated by Section 13.001 of the Texas Property Code. See 5 A.A. Leopold, Land Titles and Title Examination § 28.1 (2005); Comment, Standard 4.40. Notice Recording System,

15

Texas Title Examination Standards. See Appendix "G.

### 2. Texas Follows The "Notice" Form Of Recording Statutes

Of the three types of recording statutes in the United States[29], Texas follows the "notice" system.[30] Under the notice system, the grantee under a later deed or conveyance ("subsequent purchaser") will prevail over the grantee in a prior unrecorded conveyance of the same property or ownership, unless the subsequent or junior grantee has notice of the prior unrecorded conveyance. *Houston Oil Co. v. Kimball*, 122 SW 533 (Tex. 1910); *Watkins v. Edwards*, 23 Tex. 443 (1859); *White v. McGregor*, 50 SW 564 (Tex. 1899); *Penny v. Adams*, 420 SW 2d 820 (Tex. Civ. App. – Tyler [ 12th Dist.] 1967, writ ref'd).

But regardless, Appellant, as a prior legal title owner of the disputed lands /mineral ownership in this case pursuant to the November 23, 1993 Deed, prevails over Wildflower under all three systems of notice as a matter of law, if for no other reason, because the November 30, 1993 deed is a quitclaim, placing Rex as the grantee under such deed on notice as a matter of law of the prior and superior title in Appellant through the November 23, 1993 deed and preventing Appellee from qualifying under the Texas recording statute as a bona fide purchaser <u>without notice</u> of Appellant's superior title, and thereby preventing application or invocation of the recording statute by Appellee to defeat Appellant's title claims in this case.

### B. THE EFFECT OF A QUITCLAIM DEED ON BFP STATUS

---

[29] Comment, Standard 4.40 – Notice Recording System, Texas Title Examination Standards, page 1.

[30] The Texas notice recording statute provides in part:
   (a) A conveyance of real property or an interest in real property is void as to a **subsequent purchaser**... for a valuable consideration **without notice** unless the instrument has been acknowledged, sworn to or proved and filed for record as required by law.
   (b) The unrecorded instrument is binding... on a subsequent purchaser who does not pay a valuable consideration **or who has notice** of the instrument.
Tex. Prop. Code Ann. § 13.001.

16

The rule in Texas is that the grantee under a quitclaim conveyance cannot avail himself of the defense of an innocent purchaser without notice; instead, he is deemed to take only whatever title the grantor had at the time of the conveyance, subject to all defects thereto and adverse legal and equitable claims thereon, and is deemed to be on notice of all outstanding legal or equitable unrecorded title in favor of third parties at the time the quitclaim instrument was delivered to him. *Threadgill v. Bickerstaff*, 29 SW 757 (Tex. 1895); *Rodgers v. Burchard*, 34 Tex 442 (1870-71) 5 A.A. Leopold, Land and Title Examination § 28.5, p 153. Protection is limited to innocent purchaser of legal title to land – Claimant under quitclaim deed is not protected as innocent purchaser. (2005)

Furthermore, a subsequent grantee in a chain of title that includes a quitclaim no matter how remote, takes subject to any unknown and unrecorded interests that were outstanding at the time the quitclaim was executed, in this case, Appellant's title under the November 23,1993 deed. The notice to which the grantee is subject is not just inquiry notice but is conclusive notice as to all claims as a matter of law. As explained in *Tate v. Kramer*, 1 Tex. Civ. App. 427, 23 SW 255 ( Tex. Civ. App. 1892).

> "Finding that Neely is in the same attitude of a vendee in a quitclaim, he is required to take notice of all other claims to the land. He cannot say he knew of one, the tax title bought in by himself, and therefore did not knew of the equitable title in the plaintiffs. His position is that of one having notice of all titles. The question is not one of being merely put upon inquiry; the notice is absolute and conclusive as to all claims."

The rationale for the rule is that the taker under a quitclaim takes only such title as the grantor had, i.e., he takes only the grantor's "chance of title". Under the express wording of the November 30, 1993 deed to Wildflower, using classic quitclaim language in the granting clause and thereby as a matter of law conveying only whatever "right, title and

17

interest" the Bank's agent as grantor had in the disputed property at that time, <u>if any</u> Wildflower only acquired whatever "chance of title" the Bank may have acquired under the Substitute Trustee's deeds. As noted above, a quitclaim, in legal effect as a matter of case and statutory property law, places the grantee on notice of such adverse claims as actually exist, and whether recorded or unrecorded, rendering him a purchaser with notice who is not protected under the recording statute. It has been explained as follows:

> "A quitclaim vendee cannot be an innocent purchaser, because it serves him with notice that he is only purchasing the chance of title – such title as the vendor has, and no more. Such notice, or any notice of the fact that there is a better title, excludes good faith from the transaction. To be an innocent purchaser the vendee must in good faith pay a valuable consideration, without notice of outstanding legal or equitable rights," *Tate v. Kramer*, 23 SW 255, 1 Tex. Civ. App. 427 (1892).

In Wildflower's First Amended Original Petition, in attempting to invoke the Texas recording statute discussed above, Wildflower alleged that it acquired its interest in the property on November 30, 1993 without notice and prior to the recordation on December 3, 1993 of the November 23, 1993 deed to Appellant's husband covering the same property on. Wildflower asserted:[31]

> "As a subsequent purchaser for value, and <u>without notice</u> of any existing claim to the property, Plaintiff paid value and acted <u>in good faith</u> in purchasing the property, Plaintiff was a bona fide purchaser for value who holds superior title and ownership to the rights of the subject property under applicable law. The Plaintiff did not have either actual or constructive notice of the previously executed mineral deed without warranty to Leete Jackson, III through defendant claims ownership." (emphasis added)

Since the deed from FBG to Wildflower was a quitclaim deed as a matter of law, Wildflower cannot be an innocent purchaser because the quitclaim serves it with notice

---

[31] CR: 1, p. 13-20 Pl's First Amended Petition

that it was only purchasing whatever title, if any, the Bank had acquired under the Substitute Trustee's deeds, i.e., the Bank's chance of title – <u>such title as the Bank had at the tmie of the execution and delivery of the November 30, 1993 deed, and no more</u>. (emphasis added) This notice or any notice of the fact that there is a better title, excludes "good faith" from the transaction. To be an innocent purchaser the vendee must be in good faith, pay a valuable consideration without notice of outstanding legal or equitable rights. *Tate v. Kramer,* 23 SW 255. As a matter of law, Wildflower did not meet these requirements.

Before further discussing the merits of Appellant's case, Appellant now addresses the "waiver" issue.

In Finding of Fact No. 7 the Court found as follows:

> 7. The parties stipulated in an Agreement, pursuant to Rule 11 of the Texas Rules of Civil Procedure, that the only issues to be determined by the Court for the entry of a Final Decree in this proceeding were:
>
> a. Whether Wildflower Production Company, Inc. had actual or constructive notice of the outstanding unrecorded conveyance to Leete Jackson, III at the time of the conveyance to Wildflower Production Company, Inc.
>
> b. Whether Wildflower Production Company, Inc. was a bona fide purchaser of the interest in dispute.

See Appendix "C" for the entire text of the Rule 11 Agreement.

In Conclusion of Law No. 5 the Court found that Appellant waived any claim that the conveyance to Wildflower was a quitclaim deed as a result of the above referenced stipulation.

To find a waiver, there must be an intentional relinquishment of a known right by Appellant. *Jernigan v. Langley,* 111 SW3d 153, 157 (Tex. 2003). It is difficult to

19

understand how the trial court found that Appellant intentionally relinquished her right to claim that the November 30, 1993 deed was a quitclaim deed since the burden of proof was on Wildflower to prove its bona fide purchaser status which included establishing that the November 30, 1993 deed was not a quitclaim deed, but was a deed. *Madison v. Gordon,* 35 SW 3rd 604, 607 (Tex. 2001). As stated in *Culmell v Borroum,* 13 Tex. Civ. App. 458, 35 SW 942, 943 (1896 writ ref'd) 37 SW 313:

> "To maintain the character of a bona fide purchaser without notice for Johnston, it was essential for appellees to show that he received a deed to the land itself, and not a mere chance of title; for it is well settled that a party receiving a quitclaim deed to land cannot be deemed a bona fide purchaser of any greater interest therein than his grantor had at the time of the execution on the deed." (emphasis added)

In short, it was incumbent upon Wildflower to prove that it received a deed, instead of a quitclaim, to tracts 1 and 2 and was an innocent purchaser, exactly as Wildflower plead BFP status in its First Amended Original Petition, even if it otherwise qualified as to lack of notice, since a quitclaim deed only has the effect to pass to the grantee whatever right, title and interest the grantor in fact held at the time it executed and delivered the quitclaim deed. In *Hagaman v. Shaklee,* 243 SW 795 (Tex. Civ. App. – Galveston [1st Dist.] 1922, writ refused); the Court held:

> "That the deed from Shaklee to Hattie E. Hagaman is a quitclaim deed only, and that it was so considered by the parties concerned thereby, cannot be reasonably questioned. It is well settled that a deed such as the one … will not support a claim of purchaser in good faith, without notice, to land, as against one holding an unrecorded deed to the same land executed and delivered by the same grantor to the execution and delivery of the one first mentioned."

Appellant did not waive her contention that the November 30, 1993 deed was a quitclaim deed; it was not Appellant's burden to prove that the November 30, 1993 deed

20

was a quitclaim deed. The burden of proof was always on Wildflower to prove that the November 30, 1993 deed was in fact a conveyance of land not simply a general conveyance of a portion of grantor's right, title and interest in land acquired by grantor under a foreclosure proceeding. See Comment, Texas Title Examination Standard § 4.90. Burden of Proof, page 18. (Appendix "G"). The determination of the legal character of the November 30, 1993 deed, i.e., deed or quitclaim, is relevant as to whether Wildflower had actual or constructive notice of the November 23, 1993 deed and was a bona fide purchaser. As a matter of law, Appellant did not intentionally relinquish her known right to make Wildflower prove that the November 30, 1993 deed was a conveyance of land, i.e., a "deed" instead of a mere quitclaim.

E. THE TEST FOR DETERMINING WHETHER AN INSTRUMENT IS A QUIT CLAIM DEED.

Whether a particular instrument is a quitclaim depends on whether the instrument conveys the land itself or a mere chance of title, viewing the instrument as a whole. *Cook v.* Smith, 174 SW 1094 (Tex. 1915). In *Cook*, the Supreme Court first established the rule that a deed of reality is distinguished from a quitclaim on whether the instrument

> "Assumes to convey the property described and upon its face has
> that effect, or merely professes to convey the grantor's title to the
> property. If, according to the face of the instrument, its operation
> is to convey the property itself, it is a deed. If, on the other hand, it
> purports to convey no more than the title of the grantor, it is only a
> quitclaim deed". Id. at 1095

The intent is to be determined from the four corners of the instrument. Id. The instrument should be considered as a whole, and should be given effect as a conveyance of the land if it discloses a purpose to convey the property itself, although some of its characteristics may be those of a quitclaim. Id. The *Cook v. Smith* test has been followed in numerous

21

cases.

*Cook* confirms and establishes a long line of cases, consistently applied, to the effect that classic "all (my) right, title and interest" language in the granting clause, whether or not the property or ownership described thereafter refers to full or partial title to the subject property or a specific or general full or partial ownership interest therein, without an express conflicting intention or affirmative statement of current ownership at the time of the conveyance being otherwise expressed in the remainder of the actual wording of the conveyance in question, will render the conveyance a quitclaim, as a matter of law.

The *Cook v. Smith* test for determining whether an instrument is a quitclaim was reaffirmed by the Texas Supreme Court in *Porter v. Wilson,* 389 SW 2d 650, 654 (Tex. 1965), *Rogers v. Ricane Enterprises, Inc.,* 884 SW2d 763, 769 (Tex. 1994) and *Geodyne Energy Income Production Partnership I-E v. Newton Corp.,* 161 SW 3d 482, 486 (Tex. 2005), and that line of cases has been consistently followed by the Courts of Appeal, including in a recent case that has received considerable comment and is directly on point to the present case, *Enerlex v, Inc. v. Amerada Hess, Inc.,* 302 S.W.3d 351, (Tex. Civ. App.—Eastland 2009, pet. denied.)

In *Rogers v. Ricane Enterprises, Inc.,* 884 SW2d 763 (Tex. 1994), the Texas Supreme Court, holding as a matter of law that the oil and gas lease assignment in question was a quitclaim as a matter of law, *inter alia,* and as a result, denied the application of the estoppel-by-deed and/or after-acquired title doctrine(s), since the grantor in the assignment in question did not purport to actually claim current ownership of any particular interest in the subject property, or claim or represent by wording of the

22

assignment to be transferring any definite ownership interest instead of merely whatever chance of title or interest the grantor might have owned at the time of the assignment.

In *Rogers* the Court stated:

> "In determining whether Campbell transferred Western's property interest to Dakota, we must consider the instrument in its entirety. See Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 1095 (Tex.1915).
>
> The deed stated that E.P. Campbell granted, conveyed, sold, assigned, and transferred to Dakota "all of the right title and interest ... as conveyed to [him] by Assignments of record [including conveyance of] all of [his] right, title and interest ... in [the base lease] ... insofar as said lease covers the ... 329.3 acres.... subject to the exceptions, reservations and provisions ... stated, but all without warranty of any kind, either expressed or implied." This is the essence of a quitclaim deed. See BLACK'S LAW DICTIONARY 1126 (5th ed. 1979) (a quitclaim deed is a deed of conveyance intending to pass any title, interest or claim of the grantor, but not professing that such title is valid, nor containing any warranty or covenants for title); Porter v. Wilson, 389 S.W.2d 650, 655-56 (Tex.1965); Cook, 174 S.W. at 1095-96. A quitclaim deed is not a conveyance or a muniment of title. Adamson, 587 S.W.2d at 447-48. By itself, it does not establish any title in those holding the deed, but merely passes the interest of the grantor in the property. Id. Campbell gave Dakota only whatever title he individually had. Having no title to the property interest in question, Campbell passed no title." 884 SW2d at 772.

As set forth above, the deed in *Ricane* provided that the grantor granted, conveyed, sold, assigned and transferred to the grantee "all of the right, title and interest of the grantor in a described oil and gas lease, without warranty of any kind expressed or implied". As such, the Texas Supreme Court held that this instrument was the "essence of a quitclaim deed", citing *Cook* and *Porter v Wilson, supra.* Id.

In *Geodyne Energy Income Production Partnership I-E v. Newton Corp.*, 161 SW 3d 482 (Tex. 2005), the assignment in question

> "(1) conveyed... "all of [Assignor's] right, title and interest" in the described lease "AS IS AND WHERE IS, WITHOUT WARRANTY OF MERCHANTABILITY", (2) provided that "this Assignment hereby conveys to Assignee... all of Assignor's right, title and interest on the

23

effective date hereof in and to the Property", and (3) concluded in the habendum clause that the assignment was "WITHOUT WARRANTY OF TITLE, EITHER EXPRESS OR IMPLIED."

The Texas Supreme Court, again applying the *Cook v. Smith* test, held that this assignment was a quitclaim as a matter of law, stating, *inter alia*, that the assignment did not state "the nature or percentage interest that was being conveyed". Id. at 484.

Wildflower relies upon *Bryan v. Thomas,* 365 SW2d 628 (Tex. 1963), which held that an assignment of an oil and gas lease, in which the granting clause expressly purported to convey "all the (grantor's) **undivided** interest, in the subject property was not a quitclaim. The record in that case reflects that both grantor and grantee had knowledge that the actual ownership records and ledgers of the grantor reflected, and the grantor was claiming and representing, a specific definite ownership interest at the time of the assignment in question. Even so, the concurring opinion in *Bryan,* and subsequent criticism in the legal literature, have expressed their opinions that such holding stepped too far from the long-standing existing case law, including the *Cook* line of cases, and perhaps deviated from the otherwise consistent rules of construction including the "four corners" rule and others. F. Walter Conrad, *Property-Deeds-Notice-Quitclaim redefined in a Restricted Manner for the Purposes of Notice under the Recording Acts. Bryan v. Thomas,* 365 SW2d 628 (Tex. 1963), 41 TEX. L. REV. 939, 941-42. That line of thought has been borne out consistently since *Bryan, as evidenced that Bryan* has been cited only once in appellate decisions, and not for the issue under discussion, and has been uniformly without exception rejected in its attempted application by losing litigants in their briefing in every potentially applicable quitclaim issue case since, including but not limited to *Ricane, Geodyne,* and *Enerlex.*

24

Although there is an urging on the part of a particular segment of the oil and gas and title attorney section of the State Bar (which is rejected by an equally strong or stronger segment of the established oil and gas and title attorney Bar section) to consider application and extension of the *Bryan* holding where the granting language expresses a clear intent and representation on the part of the grantor that he owns at least some undivided interest in the subject property, that is reflected and known or mutually understood by grantor and grantee at the time of the particular conveyance, even the title attorney segment of the Bar involved in our State title examination standards project have conceded in the current proposed edition of our title standards (§4.90) that, much to their disappointment, our appellate courts and Supreme Court uniformly "ignore" or have rejected *Bryan* and followed *Cook* and its progeny, both before and ever since *Bryan*. Comment, Texas Title Standard § 4.90, page 14, Quitclaim Deeds (2015).

Despite the plea from some members of the Title Standards committee our State appellate courts cannot do otherwise until the Supreme Court completely reverses its clear dictates on this issue in the future. Therefore, in the meantime, *Bryan* is limited, as appellate briefing in such cases has consistently noted, to only those cases where the granting clause itself purports to convey an interest definitely owned by the grantor at that time in the subject property. In the present case, the only use of "undivided" ownership language is found, not in the granting clause, which is classic "all right, title and interest" quitclaim language, as discussed, *supra*, descriptive only generally and without further definition or elaboration, of an interest in the land that was "previously" owned by certain parties, but without any representation that such prior owned interest was in fact represented to be currently owned by the Bank or its grantor agent in the

25

November 30, 1993 deed, at the time of execution and delivery of such deed. Also, as noted above, such limit or qualification and quitclaim language used by and for the Bank in such deed, negating any possible application of a *Bryan* case similarity or application to the present November 30, 1993 deed, was predictable, typical, and of utmost importance to this and any other Bank grantor by reason of exercising its loan foreclosure remedies under customary mortgage/deed of trust liens and powers. Therefore, the failure to continue to uphold the *Cook* line of cases in the construction of "classic" or traditional, at this point in our legal history, ubiquitous, quitclaim conveyances, would not only turn our established rules of construction and property law on their collective heads, but undermine and destabilize our title law applicable to the banking, title insurance, real estate and related industries and professions without sufficient cause, based on this record and principles and competing interests involved in this case.

A most recent, significant, and directly on point decision by the Eastland Court of Appeals (and Rick Strange, District Judge, a former and once again board certified oil and gas attorney in his private practice in West Texas) discusses the deed vs. quitclaim issue is *Enerlex v. Amerada Hess, Inc.*, 302 SW 3d 351 (Tex. App. – Eastland [11th Dist.], no pet.).

In Enerlex, the mineral deed at issue purported to convey "all right, title and interest" in several described tracts and contained a general warranty. The Eastland Court of Appeals construed the deed as a quitclaim because it did not purport to convey any specific percentage interest in the tracts. The court cited *Ricane* and *Geodyne* in support of its holding but ignored by omission the *Bryan case*. Because Judge Strange and the Eastland Court determined the conveyance was a quitclaim as a matter of law, the

26

Court held that the subsequent grantee as a matter of law could not be a bona fide purchaser or make use of the recording statutes to defeat the superior unrecorded legal title of the prevailing party in that case, consistent with the legal positon and arguments of Appellant in this case. 302 Sw3d at 357.

Under *Enerlex*, any conveyance of the grantor's "right, title and interest" in specified lands that does not quantify the interest being conveyed is to be construed as a quitclaim, regardless of what the other provisions of the instrument provide. *Enerlex* fully supports Appellant's position in this case, is a consistent application of *Ricane* and *Geodyne*, and is sound law on the deed vs quitclaim issue.

AN ANALYSIS OF THE NOVEMBER 30, 1993 DEED UNDER THE *COOK V. SMITH* TEST.

The November 30, 1993 deed does not convey tracts 1 and 2 but only whatever title the Bank had acquired under the Substitute Trustee's deeds, i.e., whatever title the Bank had and no more, referred to in case law as the Bank's "chance of title" in tracts 1 and 2. The deed recites that the Bank grants, bargains, sells and conveys a "portion" of the grantor's "right, title and interest" in 7 different tracts of land and a 640 acre gas unit of which tracts 1 and 2 were included. The November 30, 1993 deed only conveys a chance of title, in a limited less than complete or "undivided" (but undefined and non-sourced) portion of the subject land that was "previously" owned by Jane Fuller Jackson.

In the context in which the November 30, 1993 deed was executed, it is clear that the Bank desired to convey to Wildflower only whatever chance of title it may have acquired under the Substitute Trustee's deeds, i.e., without representing that it actually owned any interest whatsoever in the subject disputed property and ownership, and

27

without quantifying any specific ownership that may have been owned by prior owners, or the source or extent of their ownership. The Bank simply indicated that whatever it may own and was conveying, if anything, at one point was owned by the parties designated or referenced in the November 30, 1993 deed, and without even designating whether what the Bank owned was all or only part of whatever such prior owners may have owned at one time.

In four separate opinions discussed herein, the Supreme Court has made it clear that a conveyance of all right, title and interest owned by the grantor, without warranty language, will be deemed to be a quitclaim deed or assignment as a matter of law. The failure of the November 30, 1993 deed to include a specific fractional or decimal interest being conveyed and the reference to the conveyance of only a portion of grantor's right, title and interest (and although not necessary, but consistently, the refusal to warrant title in the deed) is fatal to Wildflower's claim of BFP status. (emphasis added) Since the November 30, 1993 deed is a quitclaim deed as a matter of law, Wildflower was charged with actual notice of the existence of the November 23, 1993 deed at the time it accepted its own deed and the elements of good faith, and/or lack of notice of Appellant's superior legal title, and therefore the critical required element of BFP status in order for Appellee to prevail in this case, were all conclusively negated as a matter of law. For all of the reasons set forth herein, Finding of Fact No. 4 and Conclusions of Law Nos. 1 through 6 are erroneous, as a matter of law.

### PRAYER

Appellant prays that the February 8, 2015 judgement be reversed and rendered in Appellant's favor voiding the November 30, 1993 deed as to tracts 1 and 2 only and

28

upholding the November 23, 1993 deed in its entirety, and vesting the superior legal title in tracts 1 and 2 and ownership in this case in Appellant, as against Appellee and its predecessors, successors, and assigns.

Respectfully submitted

/s/ Mitchell Ehrlich
Mitchell G. Ehrlich
State Bar No. 06490750
514 South Main, Suite 300
P.O. Box 1258
Perryton, TX 79070
Telephone:    806-434-0204
Facsimile:    806-434-0464
E-mail:        melaw@ptsi.net
WHITTENBURG WHITTENBURG
STEIN & STRANGE, PC

/s/George Whittenburg
George Whittenburg
State Bar No. 21397000
P.O. Box 31718
Amarillo, Texas 79105
Telephone: (806)372-5700
Facsimile: (806)372-5757
E-mail:
gwhittenburg@whittenburglaw.com

Attorneys for Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to the Texas Rules of Appellate Procedure, the undersigned attorney for the Appellant certifies that this Brief contains 8,603 words, exclusive of the cover page, the identity of the parties and counsel, the table of contents, the index of authorities, the statement of the case, the certificate of compliance and the certificate of service.

/s/Mitchell Ehrlich
Mitchell Ehrlich

## CERTIFICATE OF SERVICE

By my signature below, I hereby certify that on the 15th day of June, 2015, a true and correct copy of the a true, correct and exact copy of the above and foregoing document was served by placing same in the United States mail, with proper postage thereon duly prepaid, in compliance with Rule 21a of the Texas Rules of Civil Procedure, or served by other means as noted, to those parties as listed below:

| Aubrey J. Fouts<br>THE FOUTS LAW FIRM<br>P.O. Box 5187<br>Lubbock, Texas 79408 | __ U.S. Mail __ CRRR<br>__ Facsimile<br>_X_ E-mail<br>__ Hand Delivery Only<br>__ Overnight Mail<br>_X_ Electronic Court Service |
|---|---|

/s/ Mitchell Ehrlich
Mitchell Ehrlich

# APPENDIX "A"

## § 29.13 Form—General Form of Deed With Exception or Reservation

The following form of deed with an exception or reservation is in general use in Texas:

THE STATE OF TEXAS      KNOW ALL MEN BY
COUNTY OF _____      THESE PRESENTS:

That I, _____, of _____ County, Texas, for and in consideration of the sum of _____ Dollars ($_____) and other good and valuable considerations, all cash, to me in hand paid by _____ of _____ County, Texas, the receipt and sufficiency of which is hereby acknowledged, subject to the exceptions and reservations hereinafter set out, have granted, sold and conveyed, and by these presents do grant, sell and convey, unto the said _____, the following tract or parcel of land in _____ County, Texas, and being more particularly described as follows:

*[complete description of land]*

There is hereby excepted from this conveyance and retained by the grantors herein, their heirs and assigns, all of the oil, gas and other minerals in and under and that may be produced from the above described lands; and this conveyance is further made subject to all rights-of-way and easements existing against the hereinabove described land.

TO HAVE AND TO HOLD the above described premises, subject to the exceptions and reservations herein contained, together with all and singular the rights and appurtenances thereto in anywise belonging, unto the said _____, his heirs and assigns forever, and I do hereby bind myself, my heirs, executors and administrators to warrant and forever defend the said premises, subject to the exceptions and reservations herein contained, unto the said _____, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof, the lands hereinabove described.

The lands hereinabove described form no part of the homestead of the grantor herein, and for that reason, his wife does not join herein.

WITNESS MY HAND, this the _____ day of _____, 20__.

_____
Signature of Grantor

*[Single acknowledgment]*

**Library References**

C.J.S. Deeds § 34.
West's Key No. Digests, Deeds ☞29.

# APPENDIX "B"

and not a quitclaim.[6] The court stated it was clear that the thing conveyed is the land the grantor expects to receive through her mother's will and not such title as Mrs. Jenkins then had to the land—it conveyed her entire interest, meaning the quantity of her interest.

### Library References

C.J.S. Deeds §§ 42, 261.
West's Key No. Digests, Deeds ⟊36, 121.

## § 31.12  Form—Quitclaim Deed

### QUITCLAIM DEED

THE STATE OF TEXAS
KNOW ALL MEN BY                          COUNTY OF _____
THESE PRESENTS: THAT

I, _____ of _____ County, Texas, for and in consideration of the sum of _____ Dollars ($_____), cash and other good and valuable consideration to me in hand paid by _____ of _____ County, Texas, the receipt and sufficiency of which is hereby acknowledged and confessed, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said _____, all of my right, title and interest in and to the following described land located in _____ County, Texas, to-wit:

(description of land)

TO HAVE AND TO HOLD all of my right, title and interest in and to the above described premises unto the said _____, his heirs and assigns forever, so that neither I, the said _____, nor my heirs, nor any person or persons claiming by, through or under me, shall at any time hereafter have, claim or demand any right or title to the aforesaid premises or appurtenances or any part thereof.

WITNESS MY HAND at _____, Texas, on this _____ day of 20__.

_____

### Library References

C.J.S. Deeds §§ 19, 34–42, 44–62.
West's Key No. Digests, Deeds ⟊26–42.

**6.** Jenkins v. Adcock, 5 Tex.Civ.   writ).
App. 466, 27 S.W. 21, 23 (1893, no

# APPENDIX "C"

# THE FOUTS LAW FIRM

Attorneys at Law
1001 Texas Ave.
Lubbock, Texas 79401
Post Office Box 5487
79408
E-Mail: ajfout@nts-online.net

AUBREY J. FOUTS
LEIGH ANN FOUTS

Telephone 806/741-0373
Telecopier 806/741-1491

September 23, 2013

Via e-mail - gwhittenburg@whittenburglaw.com

Mr. George Whittenburg
Whittenburg, Whittenburg, Stein & Strange
P. O. Box 31718
Amarillo, Texas 79120-1718

### Rule 11 Agreement

Re: No. 12,664- *Wildflower Production Company v. Jane Fuller Jackson, a/k/a Jane Fuller Morris* – 31st District Court of Wheeler County, Texas

Dear George:

Pursuant to our recent conversations, I would like to confirm our agreement concerning the status of the above case.

It is my understanding we have agreed to the following:

1.      This case will be withdrawn from the jury docket and submitted non-jury to the Court.

2.      The issues to be submitted to the Court will include only the following:

a.      Whether Wildflower Production Company, Inc, through its President, Rex Fuller, had actual or constructive notice of the outstanding, unrecorded interest of Leete Jackson, III arising from a Mineral Deed Without Warranty dated November 23, 1993 from FBGA Services, Inc. to Leete Jackson, III, recorded in Volume 417, Page 652 of the Deed Records of Wheeler County, Texas, at the time of the execution of a Mineral Deed Without Warranty by FBGA Services, Inc. to Wildflower Production Company, Inc., dated November 30, 1993.

b.      Whether Wildflower Production Company, Inc. was a bona fide purchaser of the interest in dispute in this case through the deed conveying the subject property to it, as identified above.

c.      Issues regarding the entitlement and amount of any attorney's fees to be awarded.

3.      We would agree that, accept for the above issues, all other issues in this cause related to the disputed mineral property interests are established as a matter of law, and all causes of action, except those related to the issues between Wildflower Production Company, Inc. and Jane Fuller Morris will be dismissed. The Motions for Summary Judgment of both parties will be withdrawn, except as to the issues remaining to be determined by the Court.

4.      We will present to the Court appropriate orders in compliance with the agreements in this letter, along with a request for a non-jury trial, with a listing of available dates of the parties and their clients.

5.      We will agree on times for any depositions to be taken prior to trial.

If this letter correctly states your understanding of our agreement, I would appreciate your signing a copy of this letter and return it to me by e-mail as our Rule 11 Agreement. I would also appreciate your suggestion as to dates on which you could be available for depositions in October, and trial dates in November or early December.

If this letter does not correctly state our agreement, then I would appreciate your advising as to the areas which are in dispute, and advise if you have an objection to withdrawing this case from the jury, so that we can obtain a non-jury trial date.

Very truly yours,

THE FOUTS LAW FIRM

Aubrey J. Fouts

AGREED:

George Whittenburg

AJF:ad
xc:     Wildflower Production

# APPENDIX "D

STATE OF TEXAS

COUNTY OF WHEELER

§
§ MINERAL DEED WITHOUT WARRANTY
§

KNOW ALL MEN BY THESE PRESENTS:

VOL 417 PAGE 847

That **FBGA SERVICES, INC.**, a Texas Corporation, P.O. Box 10236, Lubbock, Texas 79408, hereinafter called Grantor, (whether one or more) for and in consideration of the sum of Ten and no/100 Dollars ($10.00) cash in hand paid and other good and valuable considerations, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, convey, transfer, assign and deliver unto **WILDFLOWER PRODUCTION COMPANY, INC.**, a Texas Corporation, P.O. Box 2454, Lubbock, Texas 79408, hereinafter called Grantee, a portion of the Grantor's right, title, interest, estate, and every claim and demand, both at law and in equity, in and to that part of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Wheeler County, State of Texas, being more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes whatsoever, being that interest previously owned by **ANN FULLER LYDICK CLAYTON aka ANN FULLER aka MARGARET ANN FULLER aka ANN FULLER LYDICK aka MARGARET FULLER LYDICK aka ANN FULLER COPE aka MARGARET ANN COPE and LYDICK-JACKSON JOINT VENTURE aka COPE-JACKSON JOINT VENTURE** of P.O. Box 9181, Fort Worth, Texas 76107, and **JANE FULLER JACKSON aka FRANCES JANE FULLER aka FRANCES JANE JACKSON** of 8015 Walnut Hill Lane #105, Dallas, Texas 75231, together with the right of ingress and egress at all times for the purpose of mining, drilling, exploring, operating and developing said lands for oil, gas and other minerals, and storing, handling, transporting and marketing the same therefrom with the right to remove from said land all of Grantee's property and improvements.

This sale is made subject to any rights now existing to any lessee or assigns under any valid and subsisting oil and gas lease of record heretofore executed; it being understood and agreed that said Grantee shall have, receive, and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease insofar as it covers the above described land from and after the

A CERTIFIED COPY

Page 1 of 3
Margaret Dorman
County Clerk
Wheeler County, Texas



PLAINTIFF'S EXHIBIT 10

date hereof, precisely as if the Grantee herein had been at the date of the making of said lease, the owner of a similar undivided interest in and to the land described and Grantee one of the lessors therein.

Grantor agrees to execute such further assurances as may be requisite for the full and complete enjoyment of the rights herein granted.

**TO HAVE AND TO HOLD** the above described property and easement with all and singular the rights, privileges, and appurtenances thereunto or in any wise belonging to the said Grantee herein its successors and assigns for ever.

**WITNESS** our hands this _3o_ day of November, 1993.



FBGA SERVICES, INC.

BY: _____

TOM C. NICHOLS, President

STATE OF TEXAS          §
                        §
COUNTY OF LUBBOCK       §

This instrument was acknowledged before me on _3o_ day of November, 1993, by **TOM C. NICHOLS**, President of **FBGS SERVICES, INC.**, a Texas corporation, on behalf of said corporation.

JOHN SIMS
Notary Public, State of Texas
My Commission Expires 3-6-1997

_____
Notary Public

A CERTIFIED COPY

Page 2 of 3
Margaret Dorman
County Clerk
County, Texas

WHEELER COUNTY, TEXAS                           VL 447 PAGE 849

All of Section 23, Block L, J. M. Lindsey Survey, Wheeler County, Texas.

Section 22, Block L, J. M. Lindsey Survey, Wheeler County, Texas

All of Section 1, J. Poitevent Survey, Wheeler County, Texas, from the surface of the earth down to a depth of 15,108'

E/2 of Section 1, C & M Survey, and Thomas James Survey, Wheeler County, Texas

640 acre gas unit created by "Designation of Gas Unit, dated November 4, 1978, recorded in Volume 271, Page 403, Deed Records of Wheeler County, Texas, designated as being in the T. J. Survey and C & M RR Co. Survey, Section 1, but only as to gas produced from the interval from the surface to a depth of 16,958'.

320 acre tract of land in Section 1, C & M Survey and the Thomas James Survey, Wheeler County, Texas, described as follows:  Beginning at the SE corner of said Section 1; Thence W. along the S. line of said Section 1 and the S. line of said Thomas James Survey, a distance of 2,640'; Thency N. a distance of 5,280'; Thence E. a distance of 2,640' to the E. line of said Section; Thence S. along the E. line of said Section 1, a distance of 5,280' to the place of beginning.

Section 2, Block L, J. M Lindsey Survey, Wheeler County, Texas.

Section 3, Block L, J. M. Lindsey Survey, Wheeler County, Texas.

Section 4, J. Potivent Survey, Wheeler County, Texas

FILED FOR RECORD

93 DEC 14 PM 4: 37

Margaret Dorman
MARGARET DORMAN
COUNTY CLERK
WHEELER COUNTY, TEXAS

BY_____

A CERTIFIED COPY
Page 3 of 3
Margaret Dorman
County Clerk
Wheeler County, Texas

# CERTIFICATION

THE STATE OF TEXAS
COUNTY OF WHEELER

I, Margaret Dorman, County Clerk in and for Wheeler County, Texas do hereby certify that the above and foregoing is a true and correct copy of said instrument as it appears on file and of record in my office.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this the _31_ day of _MAY_____, 20_13_.

MARGARET DORMAN, COUNTY CLERK
WHEELER COUNTY, TEXAS

BY _Rebecca L. Brown_____
DEPUTY

# APPENDIX "E"

NO. 12,664

| | | |
|---|---|---|
| WILDFLOWER PRODUCTION COMPANY, INC. | § § § | IN THE 31ST DISTRICT COURT |
| V. | § § | OF |
| JANE FULLER JACKSON, A/K/A JANE FULLER MORRIS | § § § | WHEELER COUNTY, TEXAS |

## FINAL JUDGMENT

On the 10th day of February, 2014, WILDFLOWER PRODUCTION COMPANY, INC., and Defendant, JANE FULLER JACKSON, A/K/A JANE FULLER MORRIS, appeared in person and by and through their attorneys of record, and announce ready for trial.

The matters in controversy, in fact and in law, were submitted to the Court. The Court heard the evidence, considered the agreements of the parties of record in this proceeding, and the argument of counsel, and is the opinion that Judgment should be rendered as follows:

The Court finds that the Mineral Deed Without Warranty executed by FBGA SERVICES, INC. as Grantor, to WILDFLOWER PRODUCTION COMPANY, INC., as Grantee dated November 30, 1993 and recorded in Volume 417, page 847 of the deed records of Wheeler County, Texas, conveyed superior title in the mineral/royalty interest conveyed, over the mineral/royalty interest conveyed to LEETE JACKSON, III, from FBGA SERVICES, INC. in a Mineral Deed Without Warranty dated November 23, 1993 and recorded in Volume 417, page 652 of the Deed Records of Wheeler County, Texas. The Court finds that the Deed to WILDFLOWER PRODUCTION COMPANY, INC., was recorded prior to the Deed to LEETE JACKSON, III. And WILDFLOWER PRODUCTION COMPANY, INC. was bona fide purchaser, without notice, of the conveyance to LEETE JACKSON, III.

CERTIFIED TRUE AND CORRECT COPY
Sherri Jones, District Clerk
Wheeler County, Texas

1

IT IS, THEREFORE, ORDERED that WILDFLOWER PRODUCTION COMPANY, INC., had the superior title to the property described below over the claims of the Defendant, JANE FULLER JACKSON A/K/A JANE FULLER MORRIS, and such ownership is confirmed in WILDFLOWER PRODUCTION COMPANY, INC., as to the following property and interests:

All royalty interests arising out of oil, gas and mineral interest claimed by the parties in the following property, to wit:

First Tract: Being a part of the Thomas James 1/3 League of land, described by metes and bounds as follows:

BEGINNING at the NW corner of the J.F. Alexander tract out of the SE corner of said Thomas James Survey; THENCE North 9 deg. 46 min. East 1336.55 feet to point for corner; THENCE East 1110.3 feet to a point for corner; THENCE North 1320 feet to a point for corner; THENCE East 1401.7 feet to a point on the West line of Section No. 1, Cert. 75, C&M RR Co. Survey, for the Northeast corner of this tract; THENCE South with the West line of said Section No. 1, Cert. 75, C&M RR Co. Survey, 2640 feet to a point on the West line of said Sec. 1, Cert. 75, C&M RR Co. Survey, and a point on the East line of Thomas James 1/3 League of land for SE corner of this tract; THENCE West 2721.7 feet to the place of beginning, and containing 121.86 acres of land.

Second Tract:

Being a part of Section 1, Cert. 75, Abst. No. 112, original grantee, C&M RR Co. Patent No. 171, Vol. 55, dated October 23, 1880, described by metes and bounds as follows: BEGINNING At the NE corner of the J.F. Alexander 160 acre tract of land out of the South part of said Sec. 1, C&M RR Co. Survey; THENCE West 2558.3 feet to a point for the SW corner of this tract; THENCE North 2640 feet to a point for the NW corner of this tract; THENCE East 2558 feet to a point for the NE corner of this tract on the East boundary line of Sec. 1, Cert. 75, C&M RR Co. Survey; THENCE South 2640 feet to the beginning, containing 155.4 acres of land; both tract containing 277.26 acres of land, more or less, and situated in Wheeler County, Texas.

IT IS FURTHER ORDERED AND DECREED that WILDFLOWER PRODUCTION COMPANY, INC. is the owner of all proceeds of Production, held in suspense by the purchaser of Production, from the mineral/royalty interest determined to be owned by that party in this judgment.

2

CERTIFIED TRUE AND CORRECT COPY
Sherri Jones, District Clerk
Wheeler County, Texas

**IT IS ORDERED** that all relief requested in this proceeding and not granted is DENIED.

**SIGNED AND ENTERED** on this _2__ day of _January_____, 2015.

_____
JUDGE OF THE 31ST DISTRICT COURT
OF WHEELER COUNTY, TEXAS

**CERTIFIED TRUE AND CORRECT COPY**
The above and foregoing is a full, true and correct
photographic copy of the original on file and of
record in my office, containing ___3___ pages.

ATTEST: _____

Sherri Jones, District Clerk
Wheeler County, Texas

By: _____ Deputy

3

# APPENDIX "F"

NO. 12,664



| | | |
|---|---|---|
| WILDFLOWER PRODUCTION COMPANY, INC. | § § § | IN THE 31ST DISTRICT COURT |
| V. | § § | OF |
| JANE FULLER JACKSON, A/K/A JANE FULLER MORRIS | § § § | WHEELER COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In response to the Defendant, Jane Fuller Jackson a/k/a Jane Fuller Morris, the Court makes and files the following as the original findings of fact and conclusions of law in accordance with Rules 296 and 297 of the Texas Rules of Civil Procedure.

### Findings of Fact

1.    FBGA Services, Inc. as Grantor, executed a Mineral Deed Without Warranty to Leete Jackson, III, Grantee, dated November 23, 1993, recorded in Volume 417, Page 652 of the Deed Records of Wheeler County, Texas on December 3, 1993, conveying to the Grantee, without warranty, all of the Grantor's right, title and interest previously owned by Jane Fuller Jackson, being a .0090254 royalty interest, and ancillary rights related to the property described in the Judgment entered in this case on January 7, 2015.

2.    FBGA Services, Inc., as Grantor, executed a Mineral Deed or Assignment Without Warranty to Wildflower Production Company, Inc. dated November 30, 1993, recorded in Volume 417, Page 845 of the Deed Records of Wheeler County, Texas on December 14, 1993, conveying and assigning to the Grantee, without warranty, all of Grantor's interest in all oil, gas and other minerals related to lands situated in Wheeler County, Texas described as SE 4, Section 69, Block A-5, H&GN Survey, Wheeler County, Texas, together with ancillary rights.

1

3. The Mineral Deed or Assignment to Wildflower Production Company, Inc. from FBGA Services, Inc. included the royalty interest described in the Mineral Deed Without Warranty to Leete Jackson, III.

4. Wildflower Production Company, Inc. acquired the Mineral Interest involved in this proceeding, without notice, actual or constructive, of the conveyance to Leete Jackson, III.

5. Wildflower Production Company, Inc. paid value for the property interest conveyed to it FBGA Services, Inc.

6. The interest claimed by Jane Fuller Jackson aka Jane Fuller Morris in this proceeding was derived through the Mineral Deed Without Warranty to Leete Jackson, III.

7. The parties stipulated in an Agreement, pursuant to Rule 11 of the Texas Rules of Civil Procedure, that the only issues to be determined by the Court for the entry of a Final Decree in this proceeding were:

a. Whether Wildflower Production Company, Inc. had actual or constructive notice of the outstanding unrecorded in the conveyance to Leete Jackson, III at the time of the conveyance to Wildflower Production Company, Inc.

b. Whether Wildflower Production Company, Inc. was a bona fide purchaser of the interest in dispute.

## Conclusions of Law

1. Wildflower Production Company, Inc. was a bona fide purchaser for value of the interest conveyed to it by FBGA Services, Inc.

2. Wildflower Production Company, Inc. did not have notice, actual or constructive, of the adverse claim of Leete Jackson, III at the time of the conveyance to it from FBGA Services, Inc.

3. The mineral/royalty interest of Jane Fuller Jackson, aka Jane Fuller Morris, through the Mineral Deed Without Warranty from FBGA Services, Inc. to Leete Jackson, III was included in

2

the property interest conveyed to Wildflower Production Company, Inc., in the conveyance from FBGA Services, Inc. to it.

4. The Mineral Deed or Assignment of Lease Without Warranty from FBGA Services, Inc. to Wildflower Production Company, Inc. constituted a conveyance of title and was not a quit claim conveyance.

5. Jane Fuller Jackson aka Jane Fuller Morris waived any claim that the conveyance to Wildflower Production Company, Inc. was a quit claim conveyance by her counsel having stipulated to the issues to be determined by the Court in the Agreement pursuant to Rule 11 of the Texas Rules of Civils Procedure, which did not include an issue related to the character of the conveyance being a quit claim deed.

6. Wildflower Productions Company, Inc. has a superior claim of title, over the claim of Jane Fuller Jackson aka Jane Fuller Morris, to the interest in dispute in this case, including any suspended proceeds of production from the disputed mineral interests the subject of this suit.

SIGNED this 28th day of January, 2015.

_____
JUDGE PRESIDING

3

# APPENDIX "G"

# PROPOSED TEXAS TITLE EXAMINATION STANDARDS
## Owen L. Anderson, Editor in Chief
## Texas Title Examination Standards Editorial Board

The current Texas Title Examination Standards appear as Title 2—Appendix to the Texas Property Code. In addition, the Standards are also accessible on the Section web page via the Internet.

The Title Examination Standards Joint Editorial Board proposes to add nine new Texas Title Standards: Standards 4.40 through 4.120, inclusive.

Please study these proposed changes together with the proposed comments and cautions. The Title Examination Standards Board requests and encourages you to submit your comments to the Board so that this work will be refined before it is submitted for final adoption and promulgation.

We would also appreciate any recommendations that you may have to amend or augment the existing Standards. Please send your comments and suggestions by **June 15, 2013**, to:

> Edward H. Hill, Chair
> Texas Title Examination Standards
> Editorial Board
> 3909 Doris Drive
> Amarillo, TX 79109
> edhillannhill@sbcglobal.net

**[To be inserted after Standard 4.30]**

## Standard 4.40. Notice Recording System

Because Texas has a "notice" recordation statute, an examiner must not assume that the order of filing or recording of competing instruments establishes priority of right or that unrecorded instruments are subordinate to recorded instruments.

Comment:

Common Law Background: "Our system of registration was unknown to the common law." Ball v. Norton, 238 S.W. 889, 890 (Tex. Comm'n App. 1922, judgm't adopted). "At common law in England, there was no system of registration or recording, and the rule between claimants of the same title was found in the maxim 'prior in tempore potior est in jure,' which means, he who is first in time has the better right." 2 Maurice Merrill, Merrill on Notice § 921 (Vernon 1952). This is still the law except as abrogated by statute. Thus, as between claimants who are not entitled to the special protections conferred by recording statutes, the first in time is first in right.

Types of Recording Statutes: In general, recording statutes limit the first-in-time, first-in-right rule and were enacted to protect a bona fide purchaser, as defined in the comments to Standard 4.90, including a lienholder, who is without notice of prior unrecorded claims to real property. Three basic types of recording systems are recognized in the United States: race, race-notice, and notice.

A race statute provides that a purchaser or lienholder who is second in time of conveyance prevails if she records first, regardless of whether that person has notice of other unrecorded interests.

Under a race-notice statute, the subsequent purchaser or lienholder must acquire an interest without notice of the prior unrecorded interest and also must file for record before recordation of the prior unrecorded interest.

1

A notice statute protects a subsequent purchaser or lienholder who acquires an interest without notice of a prior unrecorded conveyance or lien, regardless of when the subsequent purchaser's deed is recorded, if ever. Nevertheless, because a party who takes without notice may lose out to another subsequent purchaser or lienholder who takes without notice, every grantee should promptly record. Texas has a notice recordation statute. Tex. Prop. Code Ann. § 13.001.

How A Notice Recordation Statute Operates: Under a notice statute, if the subsequent instrument is executed and delivered before the prior instrument is filed for record and if the subsequent purchaser or lienholder pays value and has no notice of the prior instrument, then the subsequent instrument prevails regardless of whether the prior instrument is filed for record before the subsequent instrument. Houston Oil Co. v. Kimball, 122 S.W. 533 (Tex. 1909); Watkins v. Edwards, 23 Tex. 443 (1859); White v. McGregor, 50 S.W. 564 (Tex. 1899); Penny v. Adams, 420 S.W.2d 820 (Tex. Civ. App.—Tyler 1967, writ ref'd); Matthews v. Houston Oil Co., 299 S.W. 450 (Tex. Civ. App.—Beaumont 1927, no writ); Raposa v. Johnson, 693 S.W.2d 43 (Tex. App.—Ft. Worth 1985, writ ref'd n.r.e.). For example, assume that Homeowner grants an oil and gas lease on February 1 to A, who does not file for record. Thereafter, Homeowner gives another oil and gas lease to B, a bona fide purchaser, as defined in the comments to Standard 4.90, on February 5. As between A and B, B prevails regardless of whether either A or B records. And, under Texas case law, if A assigned his lease to C on February 10, B would also prevail over C even if B has not recorded. Houston Oil Co. v. Kimball, 122 S.W. 533 (Tex. 1909). However, if Homeowner, on February 15, granted a third oil and gas lease to D for value, who took without notice of B's lease (and assuming that B has still not recorded), D would prevail over B.

Filing and Recording: A paper document filed for record may not be validly recorded or serve as notice of the paper document unless: (1) the paper document contains an original signature or signatures that are acknowledged, sworn to with a proper jurat, or proved according to law; or (2) on or after September 1, 2007, the paper document is attached as an exhibit to a paper affidavit or other document that has an original signature or signatures that are acknowledged, sworn to with a proper jurat, or proved according to law. Tex. Prop. Code Ann. § 12.0011. An original signature is not required for an electronic document that complies with the requirements of Chapter 15, Tex. Prop. Code Ann. (Uniform Real Property Electronic Recording Act); Chapter 195, Tex. Loc. Gov't Code Ann. (electronic filing of records); Chapter 322, Tex. Bus. & Comm. Code Ann. (Uniform Electronic Transactions Act); "or other applicable law." Tex. Prop. Code Ann. § 12.0011. See Standard 4.120. If made as provided by law, a certified copy, when recorded, has the same effect as the original. Tex. Loc. Gov't Code Ann. § 191.005 and Tex. Evid. Rules 902(4).

An instrument meeting the requirements of the preceding paragraph imparts constructive notice upon filing. An instrument is filed "when deposited for that purpose in the county clerk's office, together with the proper recording fees." Jones v. Macorquodale, 218 S.W. 59, 61 (Tex. Civ. App.—Galveston 1919, writ ref'd). Tex. Loc. Gov't Code Ann. § 191.003. "The county clerk [is] not authorized to 'impose additional requirements' for filing or recording a legal paper such as the removal of irrelevant notations." Ready Cable, Inc. v. RJP Southern Comfort Homes, Inc., 295 S.W.3d 763 (Tex. App.—Austin 2009, no pet.) (the phrase "unofficial document" on the top of an exhibit was an irrelevant notation). Tex. Loc. Gov't Code Ann. § 191.007(k).

"[A]n electronic document or other instrument is filed with the county clerk

2

unit in a multi-unit structure may not satisfy the criteria for claiming rights in more than just the occupied unit. Madison v. Gordon 39 S.W.3d 604 (Tex. 2001).

Ordinarily, a subsequent purchaser need not inquire whether a grantor in possession has any claim to the property. For example, there is no obligation to inquire whether the grantor's deed was, instead, a mortgage, whether the deed was fraudulently secured, or whether the deed was executed by mutual mistake. Eylar v. Eylar, 60 Tex. 315 (1883). However, special circumstances may impart constructive notice of a possible claim by a grantor. See, e.g., Anderson v. Barnwell, 52 S.W.2d 96 (Tex. Civ. App.—Texarkana 1932, aff'd Anderson v. Brawley, 86 S.W.2d 41 (Tex. 1935) (grantor was in possession over six years after conveying the property and conveyed additional interests in the property).

If possession by a third party has terminated before the buyer acquires an interest in the land, then the buyer need not inquire as to the rights of the third party in the property, even if the buyer knew of the former possession. Maxfield v. Pure Oil Co., 91 S.W.2d 892 (Tex. Civ. App.–Dallas 1936, writ dism'd w.o.j.).

Not all possession or apparent use gives rise to a duty to inquire, e.g.,:

1.  A nonvisible buried pipeline. Shaver v. National Title & Abstract Co., 361 S.W.2d 867, 869 (Tex. 1962);

2.  Minor children's occupancy of mother's homestead. Boyd v. Orr, 170 S.W.2d 829, 834 (Tex. Civ. App.—Texarkana 1943, writ ref'd);

3.  A crop. De Guerin v. Jackson, 50 S.W.2d 443, 448 (Tex. Civ. App.—Texarkana 1932), aff'd 77 S.W.2d 1041 (Tex. 1935).

**Caution**:

The above comments do not address adverse possession and prescription. See comments to Standard 4.50, supra, under subheading "Interests Not Subject To The Recording Statutes," and comments to Standard 4.90, infra, under subheading "Bona Fide Purchaser Not Protected."

Source:
Citations in the Comment:

History:
Adopted: _____, 2013.

### Standard 4.90. Qualification As Bona Fide Purchaser

An examiner cannot determine whether any party in the chain of title is a bona fide purchaser. Accordingly, an examiner must not disregard any interest in the chain of title based solely on an assumption that it was extinguished by a bona fide purchaser under the recording laws. However, if title passed by a quitclaim deed, then the grantee and the grantee's successors are not bona fide purchasers as to claims existing at the time of the quitclaim deed.

Comment:

Definition: A bona fide purchaser is one who, in good faith, pays valuable consideration without actual, constructive, or inquiry notice of an adverse claim. Sparks v. Taylor, 99 Tex. 411, 90 S.W. 485 (1906). The terms "good faith purchaser" and "bona fide purchaser" have the same meaning. Bank of America v. Babu, 340 S.W.3d 917 (Tex. App.—Dallas 2011, no pet).

A lender acquiring a mortgage, deed of trust, or other lien based on sufficient consideration and without notice of a prior claim is a bona fide purchaser. Graves v. Guaranty Bond State Bank, 161 S.W.2d 118 (Tex. Civ. App.–Texarkana 1942, no writ).

For discussion of the Texas recording law, see Standard 4.40.

This discussion will make numerous references to the following terms that were previously defined:

Constructive notice – See Standard 4.50; Actual notice – See Standard 4.70; and Inquiry notice – See Standards 4.70 and 4.80.

Consideration: To be a bona fide purchaser, the party must show that, before the party had actual, constructive, or inquiry notice of an interest, the purchaser's deed was delivered and value was paid. La Fon v. Grimes, 86 F.2d 809 (5th Cir. 1936). A recital in the deed that consideration was paid is not sufficient. That consideration was paid must be independently proven, Watkins v. Edwards, 23 Tex. 443, 448 (1859), although a recital of consideration may be an element of that proof. Davidson v. Ryle, 124 S.W. 616, 619 (Tex. 1910).

The purchaser may be a bona fide purchaser even if the purchaser has paid less than the "real value" of the land, unless the price paid is grossly inadequate. Nichols-Stewart v. Crosby, 29 S.W. 380, 382 (Tex. 1895) ($5 paid for land then worth $8,000 is grossly inadequate); McAnally v. Panther, 26 S.W.2d 478, 480 (Tex. Civ. App.–Eastland 1930, no writ) (providing numerous examples of inadequate consideration). To show that the purchaser has paid valuable consideration, the purchaser must pay more value than merely cancelling an antecedent debt. Similarly, where a grantor executes a deed of trust or mortgage for an antecedent debt, the grantee has not paid sufficient value. Turner v. Cochran, 61 S.W. 923 (Tex. 1901); Jackson v. Waldstein, 30 S.W. 47 (Tex. Civ. App.—Austin 1895, writ ref'd).

Good Faith: To be a bona fide purchaser, a purchaser must take the property in good faith. "A transferee who takes property with knowledge of such facts as would excite the suspicions of a person of ordinary prudence and put him on inquiry of the fraudulent nature of an alleged transfer does not take the property in good faith and is not a bona fide purchaser." Hahn v. Love, 321 S.W.3d 517, 527 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Whether a person takes in good faith depends on whether the purchaser is aware of circumstances within or outside the chain of title that would place the purchaser on notice of an unrecorded claim or that would excite the suspicion of a person of ordinary prudence. Noble Mortgage & Investments, LLC v. D&M Vision Investments, LLC, 340 S.W.3d 65 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Quitclaim Deed: In Texas the grantee of a quitclaim deed cannot qualify as a bona fide purchaser for value against unrecorded instruments and equities that existed at the time of the quitclaim, Threadgill v. Bickerstaff, 29 S.W.757 (Tex. 1895); Rodgers v. Burchard, 34 Tex. 442 (1870-71). The rationale is that the fact that a quitclaim deed was used, in and of itself, attests to the dubiousness of the title. See Richardson v. Levi, 3 S.W. 444, 447-48 (Tex. 1887). Although a quitclaim is fully effective to convey whatever interest the grantor owns in the property described in the deed, Harrison Oil Co. v. Sherman, 66 S.W.2d 701, 705 (Tex. Civ. App.—Beaumont 1933, writ ref'd), the grantee takes title subject to any outstanding interest or defect, whether or not recorded and whether or not the grantee is aware of it or has any means of discovering it. See, e.g., Woodward v. Ortiz, 237 S.W.2d 286, 291-92 (Tex. 1951). Moreover, in Texas, not only is the grantee under a quitclaim deed subject to any outstanding claims or equities, all subsequent purchasers in his chain of title, however remote, are likewise subject to any unknown and unrecorded interests that were outstanding at the time of the quitclaim. Houston Oil Co. v. Niles, 255 S.W. 604, 609-11 (Tex. Comm'n App. 1923, judgm't adopted).

Any title dependent on a quitclaim as a link in the chain of title cannot be marketable title, since it might at any time be defeated by some unknown claimant. Accordingly, subject to the passage of time or other factors that have removed the practical risk of a quitclaim deed, if the chain of title includes a quitclaim, then the examiner should advise client of its existence in the chain of title and of its effect.

Unfortunately, Texas case law regarding quitclaim deeds is unclear. A quitclaim deed, as traditionally defined, is one that purports to convey not the land or a specific interest but only the grantor's right, title and interest in it. See Rogers v. Ricane Enterprises, Inc., 884 S.W.2d 763, 769 (Tex. 1994); Richardson v. Levi, 3 S.W. 444 (Tex. 1887). Texas courts have developed and liberally applied the notion that, if the language of a deed as a whole reasonably implies a purpose to effect a transfer of particular rights in the land, then it will be treated as a conveyance of those rights, not a mere quitclaim, despite the presence of traditional quitclaim language and even the word "quitclaim" itself. See, e.g., Cook v. Smith, 174 S.W. 1094 (Tex. 1915); Benton Land Co. v. Jopling, 300 S.W. 28 (Tex. Comm'n App. 1927, judgm't adopted), building on a line of reasoning that seems to have originated with F. J. Harrison & Co. v. Boring & Kennard, 44 Tex. 255 (1875). This manner of construction of apparent quitclaims has been treated by at least one authority as being peculiar to Texas. See Annotation, Grantee or Mortgagee by Quitclaim Deed or Mortgage in Quitclaim Form as Within Protection of Recording Laws, 59 A.L.R. 632, 648-49 (1929).

The confusion should have been resolved by the holding in Bryan v. Thomas, 365 S.W.2d 628 (Tex. 1963), which construed a deed where the grantors conveyed "all of our undivided interest" in the minerals in a tract of land. The court in Bryan stated unequivocally, "To remove the question from speculation and doubt we now hold that the grantee in a deed which purports to convey all of the grantor's undivided interest in a particular tract of land, if otherwise entitled, will be accorded the protection of a bona fide purchaser." Id. at 630. See also Miller v. Hodges, 260 S.W. 168, 171 (Tex. Comm'n App. 1924, judgm't adopted). Unfortunately, other cases, discussed below, largely ignore Bryan.

Given the Texas courts' long history of construing deeds not to be quitclaims whenever there is any indication in the conveyance of the grantor's intention actually to convey some interest in land and the aforesaid holding in Bryan v. Thomas in particular, title examiners are warranted in passing conveyances without question except when the quitclaim characterization is inescapable. This has been the practice of Texas title examiners. However, there remains an element of subjectivity in construing deeds with quitclaim language that can lead to the interpretation of a conveyance of all the grantor's "right, title, and interest" as a mere quitclaim, particularly where the court is sympathetic to the holder of an unrecorded claim. See, Enerlex, Inc. v. Amerada Hess, Inc., 302 S.W.3d 351 (Tex. App.—Eastland 2009, no writ); Riley v. Brown, 452 S.W.2d 548 (Tex. Civ. App.—Tyler 1970, no writ). It is questionable whether Enerlex and Riley represent good law. Neither opinion distinguishes or even mentions Bryan v. Thomas. The Enerlex opinion purports to rely on Geodyne Energy Income Production Partnership I-E v. Newton Corp., 161 S.W.3d 482 (Tex. 2005), and Rogers v. Ricane Enterprises, Inc., 884 S.W.2d 763 (Tex. 1994), neither of which involved the question of whether the grantee could assert the status of a bona fide purchaser. The cases nevertheless illustrate the uncertainty in applying the relevant case law. Further, blanket conveyances, for example, of all the grantor's interests in land in a particular county or in the entire state, have generally been held to be quitclaims. See, e.g. Miller v. Pullman, 72 S.W.2d 379 (Tex. Civ. App.—Galveston 1934, writ ref'd).

14

Thus, the examiner should err on the side of construing deeds as quitclaims for purposes of rendering an opinion about title.

There are two statutory exceptions to the general rule that a grantee under a quitclaim deed cannot be a bona fide purchaser. Tex. Civ. Prac. & Rem. Code Ann. § 34.045 provides that the officer who has sold a judgment creditor's property at an execution sale is to deliver to the purchaser a conveyance of "all the right, title, interest, and claim" that the defendant in execution had in the property sold. Tex. Civ. Prac. & Rem. Code § 34.046 then provides, "The purchaser of property sold under execution is considered to be an innocent purchaser without notice if the purchaser would have been considered an innocent purchaser without notice had the sale been made voluntarily and in person by the defendant." Although the statute appears dispositive, and the status of a purchaser at an execution sale as a bona fide purchaser has been upheld, Triangle Supply Co. v. Fletcher, 408 S.W.2d 765 (Tex. Civ. App.—Eastland 1966, writ ref'd n.r.e.), officers' deeds resulting from execution sales have nevertheless been construed as quitclaims, affording the grantee no protection as a bona fide purchaser. Diversified, Inc. v. Hall, 23 S.W.3d 403 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); Smith v. Morris & Co., 694 S.W.2d 37 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (neither case addressing the effect of Tex. Civ. Prac. & Rem. Code Ann. § 34.046 or its predecessor statute). Under Tex. Tax Code Ann. §34.21(j), "A quitclaim deed to an owner redeeming property under this section is not notice of an unrecorded instrument. The grantee of a quitclaim deed and a successor or assign of the grantee may be a bona fide purchaser in good faith for value under the recording laws."

Statutes Permitting or Requiring Recordation:  The following statutes permit or require recording of particular instruments:

- Tex. Bus. Org. Code Ann. § 252.005 (reliance on recorded statement of authority of unincorporated nonprofit association);

- Tex. Civ. Prac. & Rem. Code Ann. §§ 16.035-16.037 (extension of liens);

- Tex. Civ. Prac. & Rem. Code Ann. § 34.046 (purchaser of property sold under execution considered to be an innocent purchaser without notice, if the purchaser would have been so considered had the sale been made voluntarily and in person by the defendant);

- Tex. Family Code Ann. § 3.004 (schedule of spouse's separate property);

- Tex. Family Code Ann. § 3.104 (presumed authority of spouse who is record owner);

- Tex. Family Code Ann. §§ 3.306,3.308 (order affecting the management of community);

- Tex. Family Code Ann. § 4.106 (a partition or exchange agreement of spouses);

- Tex. Family Code Ann. § 4.206 (an agreement converting separate property to community property);

- Tex. Occupations Code Ann. § 1201.2055 (a real property election for a manufactured home is not considered perfected until a certified copy of the statement of ownership and location has been filed in the real property records);

- Tex. Prob. Code Ann. § 8(a) ("When two or more courts have concurrent venue of a probate proceeding…a bona fide purchaser of real property in reliance on any such subsequent